Minshall, C. J.
The case below was brought by the Knox Rock Blasting Company against the Grafton Stone Company on a contract by the terms of which the latter company was to pay to the former certain license fees for the use of certain tools and methods in blasting rock, covered by certain letters-patent owned by the plaintiff. The contract bore date May 22, 1888, and was to continue in force for the term of one year from that date, the Stone Company paying to the Blasting Company the sum of $250 for the use of the tools and method. It also provided that the Stone Company should have the privilege of an extension of the term of the license for the period of five years from May 21, 1889, at the same rate per annum. At the termination of the first year of the contract the defendant availed itself of *363 the privilege and the agreement was extended and continued for the period of five years beginning with May 22, 1889, and ending May 21, 1894, the defendant regularly paying the stipulated sum of $250 annually for the use of the tools and method. The contract contained the further provision, which is as follows
“It is further mutually understood and agreed that, in case the party of the second part shall, at any time after the termination of this license, as set forth in any previous paragraph hereof, use or apply any of the tools or methods protected by the letters-patent referred to above, without having first obtained a new license from the party of the first part, then and in that case the license fees shall be double the sum specified in this license for at least the term of one year, and thereafter from year to year at the increased rate so long as any use shall be made of said tools or methods, not exceeding, however, the life of the patents ”
The principal issue of fact made in the case by the answer of the defendant was whether the tools and method covered by the license were used in its quarries after May 21, 1894. On this the jury rendered a special verdict in answer to certain questions propounded to them by the court. It found that they were used in the year from the 22nd day of May, 1894, to the 21st day of May, 1895; that they were not used in the next year, but were used in the year between the 22nd day of May, 1895, and May 21, 1896. There was also an issue of fact as to whether this was authorized by the company. The evidence is not incorporated in the printed record, nor does the defendant prosecute error, and these questions must, therefore, be taken as settled by the verdict; that is, *364 that a use was made of the patent in the years as found by the jury, and that this was authorized by the defendant. The court charged the jury to the effect that the stipulation for he payment of a license fee of $500, should the defendant use the patent after May 21, 1894, without license, was in the nature of a penalty; and that if it was so used, their verdict must be limited to damages actually proven by plaintiff for such use. To this the plaintiff excepted ; and asked for a charge that if it was so used, then their verdict should be for the sum of $500 for each year during which the jury found any use to have been made of the tools and method covered by the patent; which the court refused and the plaintiff excepted. The jury rendered a verdict for $129.02. The plaintiff filed a motion for a new trial, also, a motion for a judgment of $1,000 on the special findings of the jury. Both of these motions were overruled and exceptions taken. On a bill of exceptions the case was taken to the circuit court which affirmed the judgment of the common pleas, and the case is brought here for a reversal of both courts, and a judgment on the special findings for the plaintiff in the sum of $1,000.
• The only question then of law presented by the record, except one as to the validity of the contract which we shall consider later, is whether what was to be paid in case the defendant should use the method and tools after May 21, 1894, without license, was in the nature of a penalty, or, of liquidated damages. We think it was of the latter character, or, more properly, an agreement by which the defendant might continue the use of the patent after that time without license by annually paying $500.
*365 When the agreement was made' in 1888 both parties may have been and probably were, uncertain as to what the value of the use of the patent might be at the end of six years thereafter. It might be more or less than $250, the value agreed on for the term. As it might be more», the defendant might be willing from and after that time to pay $500 annually for it, and under the contract it could do this, without further permission from the plaintiff, by paying that sum as long as it used it. On the other hand, whilst the plaintiff in 1888 might not have been willing to let the patent indefinitely at the rate of $250 annually to be paid, was willing to agree that after 1894 the defendant might continue to use it for an indefinite time by paying at the rate of $500 annually, as long as it was used. Certainly the parties had the right to make such a contract. It violated no principle of law or public policy, and we can see no reason why it should not be enforced. The probable value of the patent being uncertain when the contract was made, the plaintiff protected itself from an obligation for an indefinite time to receive for its use less than it was worth, and the defendant secured the right to continue its use after the end of the term fixed at the rate of $500, though the use might be worth more; and if the use of it was worth less than that sum, it was- at liberty to discontinue the use without further liability. In this case the contractual relation of the parties would be at an end, and they would be at liberty to make a new contract upon such terms as they saw fit, or to abandon the relation entirely.
In the view we take of this case there is room for doubt whether it presents the question, whether the stipulation is in the nature of a penalty, or, of liquidated damages. It seems, as we have indicated, to *366 have been what the parties agreed on as the license fee that should be paid in case the defendant saw fit to continue to use the tools and method after the expiration of the term agreed on. It was quite as competent for the parties to agree about this as to agree on the rate for its use in the first instance. But should we be wrong in this, it is still clear, that the stipulation must be regarded as liquidated damages. As the parties could not know in 1888 what the value of the use of the patent might be after 1894, it was certainly a proper subject for agreement between them as to what should be paid as damages, should the defendant continue to use the patent without license after the expiration of the term, and this they did by agreeing on the sum of $500. It could hardly have been the intention of the parties, that the right of the plaintiff, in case use should be made of the patent after the expiration of five years, should be limited in each year, to the actual damages he might be able to show that he sustained, from the use made. It would be difficult to lay down a principle by which such damages could be estimated by a jury; and. would have imposed on him a vigilance as to the use made, that it is not likely that he would have assumed. Hence they agreed what he should receive, in case any-use was made of the patent contrary to the agreement. Many analogous instances are to be found in which the agreement was held to be liquidated damages. See 2 Greenleaf on Evidence, section 259. Ordinarily where the sum fixed is to secure the payment of a less sum, or a sum capable of ascertainment by calculation, the sum fixed will be regarded as discharged by the payment of the less sum; but if the sum to be paid is uncertain at the time and may vary with circumstances, the parties may fix the same by *367 agreement and it will be regarded as liquidated damages. In Price v. Green, 16 M. & W., 346, it is said by Best, C. J.:
“The law relative to liquidated damages has always been in a state of great uncertainty. This has been occasioned by judges endeavoring to make better contracts for parties than they have made for themselves. I think that the parties to contracts from knowing exactly their own situations and objects can better appreciate the consequence of their failing to obtain these objects than either judges or juries. Whether a contract be under seal or not, if it clearly states whai; shall be paid by the party who breaks it, to the party to whose prejudice it is broken, the verdict in an action for breach of it should be for the stipulated sum. A court of justice has no more authority to put a different construction on the part of an instrument ascertaining the amount of damages, than it has to decide contrary to any of its other clauses. Our office is to ascertain the intent of the parties, and if not contrary to law, to carry their intent into execution.”
In the well considered case of Dwinel v. Brown, 54 Me., 468, which was a suit to recover the stipulated damages for the breach of an agreement to put teams on the plaintiff’s land and carry on a lumbering operation and pay an agreed amount for stumpage, the court said:
“The parties themselves best know what their expectations are in regard to the advantages of their undertaking and the damages attendant on its failure, and when they have mutually agreed on the amount of such damages in good faith and without illegality, it is as much the duty of the court to enforce that agreement as it is the other provisions of the contract. In construing the other parts of the con *368 tract, so in giving construction to the stipulation concerning the damages, the intention of the parties governs.”
The court added the following sensible comment:
“It is the province of the court to uphold' existing contracts, not to make new ones. It is not for the court to sit in judgment upon the wisdom or folly of the parties in making the contract, when their intention is clearly expressed and there is no fraud or' illegality. No judges, however eminent, can place themselves in the place or position of the parties when the contract was made, scan the motives and weigh the considerations which influenced them in the transaction, so as to determine what would have been best for them to do, who was least sagacious or who drove the best bargain. * * * The interests of the public are quite as likely to be subserved in maintaining the inviolability of contracts as they are in contriving ways and means to make a contract mean what is not apparent on the face of it to save a party from some conjectural inequity growing out of the supposed inadvertence or improvidence.”
So that if we treat the case before us as one in which the parties stipulated what the damages should be for a breach of the contract, rather than as an agreement as to the license fee to be paid should the defendant continue the use of the patent after a certain term, the result must be the same; the actual damages were uncertain and incapable of calculation, so that the sum agreed on must be regarded as liquidated damages.
Judgment vacated, and judgment for the plaintiff in error in the sum of $1,000.
Williams, Bueket, Speae, Davis . and Shauck, JJ., concur.